IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **ARLINGTON SOUTHERN HILLS, LLC,** § § § § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:13-cv-676-O |
| § | |
| **THE AMERICAN INSURANCE COMPANY,** § § § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant The American Insurance Company's ("Defendant") Motion to Exclude Testimony of Howard Altschule (ECF No. 40), filed August 15, 2014; Motion to Exclude Testimony of Sean Peatrowsky (ECF No. 43), filed August 15, 2014; Motion to Exclude Testimony of Tom Irmiter (ECF No. 46), filed August 15, 2014; and Plaintiff Arlington Southern Hills, LLC's ("Plaintiff") Motion to Exclude Testimony of Tim Marshall (ECF No. 49), filed August 18, 2014.[1]

For the reasons stated below, the Court **denies** Defendant's Motion to Exclude Testimony of Howard Altschule (ECF No. 40); **denies** Defendant's Motion to Exclude Testimony of Sean

---

[1] More fully before the Court are Defendant's Brief and Appendix in Support of its Motion to Exclude Howard Altschule (ECF Nos. 41-42); Defendant's Brief and Appendix in Support of its Motion to Exclude Sean Peatrowsky (ECF Nos. 44-45); Defendant's Brief and Appendix in Support of its Motion to Exclude Tom Irmiter (ECF Nos. 47-48); Plaintiff's Brief and Appendix in Support of its Motion to Exclude Tim Marshall (ECF Nos. 50-51); Plaintiff's Brief and Appendix in Response to Motion to Exclude Howard Altschule (ECF No. 72-73); Plaintiff's Brief and Appendix in Response to Motion to Exclude Sean Peatrowsky (ECF No. 70, 74); Plaintiff's Brief and Appendix in Response to Exclude Testimony of Tom Irmiter (ECF No. 71, 75); Defendant's Brief in Response to Motion to Exclude Tim Marshall (ECF No. 80); Defendant's Reply to Motion to Exclude Howard Altschule (ECF No. 88); Defendant's Reply to Motion to Exclude Sean Peatrowsky (ECF No. 89); Defendant's Reply to Motion to Exclude Tom Irmiter (ECF No. 90); and Plaintiff's Reply to Motion to Exclude Tim Marshall (ECF No. 93).

Peatrowsky (ECF No. 43); **denies** Defendant's Motion to Exclude Testimony of Tom Irmiter (ECF No. 46); and **denies** Plaintiff's Motion to Exclude Testimony of Tim Marshall (ECF No. 49).

I. BACKGROUND

Defendant issued a property and general liability coverage insurance policy to Plaintiff covering any direct physical loss of or damage to Plaintiff's apartment complex located in Arlington, Texas. *See* App. Def.'s Mot. Partial Summ. J. (Insurance Policy) 18-19, 48, ECF No. 24-1. The policy covered the period from February 7, 2011, to February 7, 2012. *Id.* at 18. Prior to issuing the policy, Defendant performed a Roof Survey Checklist on Plaintiff's property and determined that although the roof was "beginning to show age and leak in some areas," there were no broken or missing tiles or previous damage from wind or hail. App. Pl.'s Br. Supp. Resp. Ex. G (Checklist) 87-88, ECF No. 27.

On May 24, 2011, there was a wind and hail storm (the "May storm") in Arlington, Texas. App. Def.'s Mot. Partial Summ. J. (Seal Dep.) 206 at 47:1-4, ECF No. 24-5. Plaintiff contends that as a result of the storm, the tenants began to complain more frequently about roof leaks. App. Pl.'s Br. Supp. Resp. Ex. H (Hehar Dep.) 100:4-11, ECF No. 27. On May 30, 2011, Plaintiff submitted a claim to Defendant for damage to the roofing of the apartment buildings reportedly caused by the May storm. App. Pl.'s Br. Supp. Resp. Ex. F (Kaufman Dep.) 69:20-23, ECF No. 27. The claim was assigned to Senior Property Adjuster Eric Seal who later hired an engineer to inspect Plaintiff's property. App. Def.'s Mot. Partial Summ. J. (Seal Dep.) 198 at 15:7, 201 at 29:14-23, 203 at 35:20-25, ECF No. 24-5. The engineer determined that the storm did not cause the instant damage to the apartment buildings' roof tiles. App. Def.'s Mot. Partial Summ. J. (Fireman's Fund Letter) 235-236, ECF No. 24-6. On September 22, 2011, Defendant ultimately concluded that, although there was covered damage to the property, the damage was not in excess of the deductible in Plaintiff's policy.

App. Def.'s Mot. Partial Summ. J. (Seal Dep.) 221 at 107:21-108:1, ECF No. 24-5. Defendant closed the claim and did not pay Plaintiff. App. Def.'s Mot. Partial Summ. J. (Fireman's Fund Letter) 231, ECF No. 24-6. Plaintiff brought the instant suit seeking reimbursement.

Defendant now moves to exclude the testimony of: (1) Howard Altschule who will testify about the size of the hail that fell on the property; (2) Sean Peatrowsky who will testify about the cause of the damage to the property and the appropriate repairs to the property; and (3) Tom Irmiter who will testify about the estimated damages and scope of repairs to the property. Plaintiff moves to exclude the testimony of Tim Marshall who will testify about the size of hail that fell on the property. The motions have been fully briefed and are ripe for determination.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). This rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Effective December 1, 2000, Rule 702 was amended to incorporate the principles first articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* Fed. R. Evid. 702, adv. comm. notes (2000). Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997). The trial court is charged with making this preliminary determination under

Fed. R. Evid. 104(a).[2] *Andrade Garcia v. Columbia Medical Center of Sherman*, 996 F.Supp. 617, 620 (E.D. Tex. 1998); *see also* Fed. R. Evid., adv. comm. notes (2000).

*Daubert* lists five non-exclusive factors to consider when assessing the scientific validity or reliability of expert testimony:

1. Whether the theory or technique has been tested;

2. Whether the theory or technique has been subjected to peer review and publication;

3. The known or potential rate of error of the method used;

4. The existence and maintenance of standards and controls in the methodology; and

5. Whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-95. These factors are not necessarily limited to scientific evidence and may be applicable to testimony offered by non-scientific experts, depending upon "the particular circumstances of the particular case at issue." *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). In either case, the *Daubert* analysis focuses on the reasoning or methodology employed by the expert, not the ultimate conclusion. *Watkins*, 121 F.3d at 989. The purpose of such an inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (quoting *Kumho Tire*, 526 U.S. at 152). Thus, the court "must

---

[2] Fed. R. Evid. 104(a) provides:

Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

review only the reasonableness of the expert's use of such an approach, together with his particular method of analyzing the data so obtained, to draw a conclusion regarding the specific matter to which the expert testimony is directly relevant." *American Tourmaline Fields v. International Paper Co.*, 1999 WL 242690 at *2 (N.D. Tex. Apr. 19, 1999) (citing *Kumho Tire*, 526 U.S. at 154).

The test of reliability is necessarily a flexible one. As the Supreme Court has recognized, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150; *see also Watkins*, 121 F.3d at 988-89 ("Not every guidepost outlined in *Daubert* will necessarily apply to expert testimony[.]"). A trial court has wide latitude in deciding how to determine reliability, just as it has considerable discretion with respect to the ultimate reliability determination. *Kumho Tire*, 526 U.S. at 152. Moreover, "the rejection of expert testimony is the exception rather than the rule." *See* Fed. R. Evid. 702, adv. comm. notes (2000). *Daubert* did not work a seachange over federal evidence law, and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *See id.* (quoting *United States v. 14.38 Acres of Land, More or Less, Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)). Even after *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994) ("The grounds for the expert's opinion merely have to be good, they do not have to be perfect.").

### III.    ANALYSIS

#### A.    Plaintiff's Experts

Plaintiff offers testimony of three experts–Howard Altschule, Sean Peatrowsky, and Tom

Irmiter–to support its position that a hail storm caused damage to its property within the scope of its insurance policy. Defendant contends that Altschule's testimony is not helpful to the jury within the meaning of Federal Rule of Evidence 702(a) and that his opinion is not reliable. Additionally, Defendant argues that Peatrowsky's testimony lacks methodological reliability. Finally, Defendant maintains that Irmiter is unqualified to give his opinion, that his testimony would be needlessly cumulative of Peatrowsky's opinion, and that his opinion is unreliable. Judged against the standards of Federal Rule of Evidence 702 and Supreme Court precedent, for the reasons that follow, the Court determines that Altschule and Peatrowsky's testimony are each admissible.

1. Howard Altschule

Plaintiffs retained Howard Altschule as an expert to review the occurrence of precipitation and thunderstorms in the vicinity of 2624 Southern Hills Boulevard, Arlington, Texas, ("the property") to determine whether any hail fell in the area. App. Def.'s Mot. Exclude Testimony of Howard Altschule (Altschule Report) 1, ECF No. 40-2. Altschule wrote his report on January 15, 2014. *Id.* Additionally, Altschule was deposed on April 17, 2014. App. Def.'s Mot. Exclude Testimony of Howard Altschule (Altschule Dep.) 2, 5:8-10, ECF No. 40-2. Altschule received a Bachelor of Science degree in Atmospheric Science from State University of New York at Albany in May 1995. App. Pl.'s Mot. Opp'n Mot. Exclude Testimony of Howard Altschule Exhibit A 1, ECF No. 73. In February 2014, Altschule earned the Certified Consulting Meteorologist (CCM) designation from the American Meteorological Society (AMS). *Id.* at 11. According to the AMS, the CCM credential is awarded to "highly qualified meteorologists providing research and services to a wide variety of users of weather information" who "demonstrate a broad background in meteorology together with detailed knowledge in a particular field of specialization." *Id.* CCM designees are "considered experts in the application of weather information to a host of practical

challenges . . . [including] expert testimony on weather-related court cases." *Id*. Altschule also received the AMS "Seal of Approval" in January 2001, which is given when an individual establishes that he meets the "criteria for scientific competence and effective communication skills in [his] weather presentations." *Id*. at 3.

Altschule's opinion is that three storms occurred on May 24, 2011, each likely causing severe hail at the covered property. App. Def.'s Mot. Exclude Testimony of Howard Altschule (Altschule Report) 32, ECF No. 40-2. Altschule reviewed the following data in his investigation: (1) hourly surface weather observations from the Dallas/Fort Worth International Airport, Dallas Love Field Airport, Arlington Municipal Airport, Grand Prairie Municipal Airport, and Fort Worth Meacham International Airport; (2) cooperative observer station reports from Arlington 5.7 North and Arlington 3.7 North-Northwest; (3) the publication "Local Climatological Data" for Dallas/Fort Worth International Airport and Dallas Love Field Airport; (4) the publication "Storm Data" for Texas in May 2011; (5) the super-resolution reflectivity Doppler radar images from the Dallas/Fort Worth, Texas ("DFW") radar site zoomed over the incident location; (6) super-resolution velocity Doppler radar images from the DFW radar site zoomed in over the incident location; (7) storm relative velocity Doppler radar images from Dallas/Fort Worth ; (8) super-resolution Level 2 Doppler radar images from the DFW radar site zoomed in over the incident location and analyzed using Gibson Ridge Analyst; and (9) various National Weather Service statements, advisories, bulletins and reports issued by the DFW office. *Id*. at 25-26. In respect to his methodology, Altschule noted that he used "only the most trusted and reliable sources of weather information that can be certified by the federal government." *Id*. at 25.

Defendant challenges Altschule's ability to render "helpful" testimony within the meaning of Federal Rule of Evidence 702(a). Def.'s Br. Supp. Mot. Exclude Testimony Howard Altschule

3, ECF No. 41.  In support, Defendant points to Altschule's deposition testimony:

> Q: And if no one reports of an actual observation of hail size at the property, what, in your mind, is the next best thing to determine what size hail impacted a property?
>
> A: My job, as a Meteorologist, is to look at all of the weather information and the data, and determine, within a reasonable degree of Meteorological certainty, what the hail size was and if hail occurred at all at an incident location, and that is my expertise, and that is what I was asked to do, and that is what I did based on sound scientific principle and accepted forms of weather data and Meteorological data.
>
> Q: Do you have an opinion as to what methods are the most reliable as to what size hail impacted a property?
>
> A: I think I already answered that. Someone there actually measuring it at the time it's falling.
>
> Q: And apart from that, do you have an opinion on what other methods would be reliable to measure the size of hail that may have impacted a property?
>
> A: I think that is beyond my expertise.

App. Def.'s Mot. Exclude Testimony Howard Altschule (Altschule Dep.) 6, 23:12-25; 24:1-13, ECF No. 40-2.  Defendant relies on Altschule's testimony that it is beyond his expertise to determine what other methods, aside from the methods he had previously listed, that would be reliable to measure the size of hail that may have impacted a property.  *Id*.  Defendant argues that this testimony evidences that "Altschule can provide no reliable testimony on [the cause of damage], or even what size hail actually impacted the property;" thus, Altschule's testimony is inadmissible. Def.'s Br. Supp. Mot. Exclude Testimony Howard Altschule 4, ECF No. 41.  This argument is unpersuasive. Altschule testified that looking at all of the weather information and data regarding a storm occurring at an incident location would be another reliable method of determining what size hail impacted a property.  App. Def.'s Mot. Exclude Testimony Howard Altschule (Altschule Dep.) 6, 23:12-25; 24:1-13, ECF No. 40-2.  Additionally, Altschule testified that he in fact reviewed the relevant weather data "within a reasonable degree of Meteorological certainty" to determine the size of hail

that fell. "Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. The Court finds that Altschule's testimony regarding the size of hail that impacted the property will "assist the trier of fact to understand or determine a fact in issue" and therefore is "helpful" as required by Federal Rule of Evidence 702(a).

Defendant further argues that even if Altschule's opinions regarding the hail were helpful, his opinion that 1.75 inch hail fell at the property is unreliable because "it is based solely on three ground reports of 1.75 inch hail somewhere 'in Arlington' and another report 'one mile south of Euless.'"[3] Def.'s Br. Supp. Mot. Exclude Testimony Howard Altschule 4, ECF No. 41. Defendant contends that "Altschule's reliance on two spotter reports . . . to reach the conclusion that hail of that size fell at the Property is too great an analytical leap." Def.'s Reply Br. Supp. Mot. Exclude Testimony Howard Altschule 3, ECF No. 88. In his report, Altschule opined that while the Doppler radar indicated that the maximum estimated hail size was approximately 0.80 inches over the incident location, "Local Storm Reports from 1 mile south of Euless, Texas and also from Arlington, Texas both indicated 1.75" diameter hail fell." App. Def.'s Mot. Exclude Testimony Howard Altschule 33, ECF No. 40-2. As a result, Altschule concluded "it [is] my opinion that 1.75' in diameter hail fell in the vicinity of the incident location." *Id.* In his deposition, Altschule explained that "when I use 'in the vicinity of the incident location,' it's meant to include[] the property involved in this investigation, in the immediate vicinity of there, not just in Euless or just in Arlington." App. Def.'s Mot. Exclude Testimony Howard Altschule (Altschule Dep.) 10, 39:6-25, 39:2-6. He added "[t]his analysis and my findings are based on my opinions in the vicinity of the

---

[3] Defendant does not contest Altschule's opinion that hail likely fell at the size of approximately 1.13 inches in the first supercell or at the size of 1.00 to 1.51 inches in the third supercell. *See generally* Def.'s Br. Supp. Mot. Exclude Testimony Howard Altschule ECF No. 41.

incident location, which should include the property at 2624 Southern Hills Boulevard." *Id*. at 10, 39:2-6. Altschule also explained why he weighted the storm reports more heavily than the Doppler radar report:

> If you look at all the weather records, including the Doppler radar reflectivity images, the POSH images, the mechanical images, the storm reports, the National Weather Service warnings, the text in those warnings, when you [look] at this --by the way, the one mile south of Euless location changed. There was a Meteorologist-- National Weather Service Meteorologist that reported that. Sometimes it was one mile south, sometimes two miles south. Many times, the National Weather Service, when they receive a report, they just put the generic landmark location in there because they are really too busy, many times, to look up specifically the intersection.  Unless otherwise stated, they assign one mile south or two miles south. When you look at that and the contours of the probability of severe hail, the maximum estimated hail size, these pass right over the incident location, these higher values. The radar was also indicating, you know, 80 over the incident location for the hail size, and it was also indicating -- the radar, itself, was indicating less than 1.75 inch diameter hail seen over Arlington, but we know that the hail was 1.75 inches over Arlington because there are actual reports that were sent in for that area.

App. Def.'s Mot. Exclude Testimony Howard Altschule (Altschule Dep.) 10, 39:20-25, 40:2-25, ECF No. 40-2. Applying the standards of Federal Rule of Evidence 702 and Supreme Court precedent, the Court finds that Altschule's testimony regarding the size of hail that fell at the property is admissible.

    2. <u>Sean Peatrowsky</u>

Plaintiff offers the expert testimony of Sean Peatrowsky to establish that the damage to the roof tiles of the property was caused by the storm occurring on May 24, 2011. Pl.'s Br. Resp. Mot. Exclude Sean Peatrowsky 1, ECF No. 70. Plaintiff also seeks to have Peatrowsky offer his opinions relating to damage of the air-conditioning units at the property. *Id*. Peatrowsky graduated from the University of Nebraska with a Bachelor of Science degree in Civil Engineering in 1997 and a Bachelor of Science degree in Architectural Studies in 1995. App. Pl.'s Resp. Mot. Exclude Testimony Sean Peatrowsky 2, ECF No. 74. Peatrowsky has thirteen years' experience in "structural

design engineering, geotechnical engineering, new construction inspections, and forensic investigations." *Id*.

Defendant seeks to exclude Peatrowsky's testimony on the basis that his opinions are unreliable. Def.'s Br. Supp. Mot. Exclude Sean Peatrowsky 3-9, ECF No. 44. More specifically, Defendant argues that Peatrowsky is unable to offer his opinion regarding the cause of the damage to the roof because he "failed to consider prior wind events, which he admits is a possible cause of the damage." *Id*. at 3. Defendant additionally argues that Peatrowsky's opinion regarding the proper repair for the air-conditioning units should be excluded because "it lacks methodological reliability, and Peatrowsky admits that it is outside his expertise." *Id*. at 7. Peatrowsky accessed the roof of every building on the property aside from the pool building. App. Def.'s Mot. Exclude Sean Peatrowsky (Peatrowsky Dep.) 9, 35:2-5, ECF No. 45. Peatrowsky opines that the largest hail size that fell on the property was between 1.5 and 1.34 inches in diameter. *Id*. at 13, 49:9-13. In reaching this conclusion, Peatrowsky observed the impact damage on the roof, read the weather reports prepared for the investigation, saw "the news footage of the hail that fell at the ballpark in Arlington on the night of the storm," and investigated two other buildings near the property that were damaged by hail from the same storm. *Id*. at 13, 49:14-25. Regarding, the observed damage, Peatrowsky testified that he saw "impact damage to the tile roofs, impact damage to the air conditioner units around the buildings, impact damage to the . . . rain gutters on the buildings and downspouts, [and] impact damage to window screens and window frames." *Id*. at 13, 51:16-25. Peatrowsky did not quantify the number of roof tiles broken as a result of either the wind or the hail "because the tiles were still broken by the same storm event." *Id*. at 25, 98:17-25. Defendant points to Peatrowsky's testimony where, after being asked whether "it [was] possible that prior wind events at the property

could have damaged some of those concrete roofing tiles," he responded in the affirmative.[4] *Id*. at 26, 101:1-5. According to Defendant, this suggests that Peatrowsky's opinion is not reliable. Def.'s Br. Supp. Mot. Exclude Testimony Shawn Peatrowsky 6, ECF No. 44. "Elimination of alternative possibilities is one method of arriving at a result reliably, but it is not the only method." *Chisesi Bros. Meat Packing Co. v. Westchester Surplus Lines Ins. Co.*, No. 09-6523, 2010 WL 3720465, at *4 (E.D. La September 9, 2010). While failing to eliminate other possible causes may diminish the strength of an expert's opinion, the admissibility of that opinion is not affected. *Id*. Accordingly, the Court finds that Peatrowsky's testimony regarding the cause of the damage to the concrete roof tiles is admissible.

Regarding the repairs to the air-conditioning units, Peatrowsky opined that he did not "advocate the combing of A/C units[5] due to known efficiency loss associated with the procedure for impact damaged units." *Id*. at 20, 77:16-25. Although he stated that the process did not return the unit to "100 percent" in cases where the damage was severe, he noted that in cases where the damages are minor, the unit could be fully restored. *Id*. at 20, 78:1-9, 79:25, 80:1-6. Peatrowsky ultimately concluded that the damaged units would need to be replaced. *Id*. at 22, 86:1-6. He testified that he reached this conclusion because most of the units that he observed with damage were "of an age that . . . parts would no longer be available for repair [and] . . . they would probably not meet current energy codes." *Id*. at 22, 86:7-13. Defendant points to portions of Peatrowsky's

---

[4] In his testimony, Peatrowsky noted that he referred to "a copy of the Weather Fusion point data report going back approximately six years . . . and there was no recorded events of hail of [1.75 inches] contained in those reports." App. Def.'s Br. Supp. Mot. Exclude Sean Peatrowsky (Peatrowsky Dep.) 14, 53:18-23, ECF No. 45. He later conceded that he was unsure whether he "actually ordered" the data for the specific property. *Id*. at 14, 55:1-5.

[5] Peatrowsky defines "combing" as a process used to straighten the fins of a damaged air-conditioning unit. App. Def.'s Mot. Exclude Sean Peatrowsky (Peatrowsky Dep.) 20, 78:1-9. He also notes that the combing process is used to straighten an air-conditioning coil that has been bent or damaged. *Id*.

testimony where he was questioned about the basis of his opinion to support a finding that his testimony is inadmissible. Peatrowsky testified that he could not quantify how combing could impact the efficiency of a unit, that he had not conducted any investigation to make that determination, and that he did not base his opinion on any industry report or data. *Id*. at 20, 78:10-18, 80:19-24. The Court finds this evidence unpersuasive. Peatrowsky, a licensed engineer, determined that combing the older air-conditioning units would be an improper method of repair. He based this opinion on his background, training, thirteen years of experience in performing forensic investigations, and inspection of the property. The Court finds that Peatrowsky's testimony regarding the repair of the air-conditioning units is admissible.

      3.    <u>Tom Irmiter</u>

Plaintiff employed Tom Irmiter to review the property to estimate the damages and assess issues related to required code and manufacturer requirements in determining the scope of repair. Pl.'s Br. Opp'n Mot. Exclude Testimony Tom Irmiter 1, ECF No. 71. Irmiter co-authored a report with Peatrowsky on January 26, 2014, and a rebuttal report on April 2, 2014. App. Pl.'s Opp'n Mot. Exclude Testimony Tom Irmiter 30-82, ECF No. 48. Irmiter gave deposition testimony on April 30, 2014. *Id*. at 1, 1:14-16. Irmiter graduated from Hamline University with a Bachelor of Arts degree in English. *Id*. at 11, 41:5-7. Additionally, he is a certified building code official in Minnesota and has received various certificates including a Statistical Analysis certificate from George Washington University, an International Code Council Building Inspector Certificate, and an International Code Property Management Inspector Certificate. *Id*. at 11, 44:1-24.

Defendant does not dispute that Irmiter is qualified to testify as to the scope of the damage to the property. Def.'s Reply Br. Supp. Mot. Exclude Testimony Tom Irmiter 2, ECF No. 90. Defendant instead argues that all of Irmiter's opinions on causation of the damages should be

excluded because he is not qualified to give the opinions and because they are cumulative of Peatrowsky's testimony. *Id*. at 3. In support of this argument, Defendant first points to Irmiter's testimony that he is qualified to determine whether hail damaged a property because he has performed "exhaustive" online research on the matter and has twenty-five years' experience in physically inspecting properties. App. Def.'s Mot. Exclude Testimony Tom Irmiter (Irmiter Dep.) 12-13, 48:2-50:3, ECF No. 48. Irmiter notes that "there really is no scientific information that's put out by the manufacturers that defines what hail is;" instead, he states that the process of determining hail damage is "an art form." *Id*. at 13, 49:13-24. "The *Daubert* factors are not particularly helpful in measuring the reliability of a non-scientific expert testifying based on . . . [his] practical experience." *Cox Operating, LLC v. St. Paul Surplus Lines Ins. Co.*, 2013 WL 1752405 at *3 (S.D. Tex. April 23, 2013). Additionally, "[e]xperts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility." *Id*. at *1. Irmiter has several inspection certificates and is a state certified building inspector. He also has twenty-five years of experience in inspecting hail claims. The Court finds that Irmiter is qualified to testify about the causation of the damage to the property.

Defendant further contends that Irmiter's testimony would be cumulative of Peatrowsky's because in his deposition, Irmiter noted that he and Peatrowsky made a "collaborative effort" in co-authoring their expert report. *Id*. at 7, 28:14-22. Irmiter performed his own investigation of the property; this inspection and determination of the cause of the damage relates to his testimony regarding the scope of the damages.[6] The Court finds that Irmiter's testimony regarding what he determined to be the cause of the damage to the roof tiles is admissible because it is not needlessly

---

[6] As noted above, Defendant does not dispute Irmiter's testimony regarding the scope of the damage.

cumulative of Peatrowsky's testimony.[7]  *See* Fed. Rule Evid. 403.

Defendant also argues that Irmiter's opinion regarding the scope of the loss to the air-conditioning units is not reliable. Def.'s Br. Supp. Mot. Exclude Testimony Tom Irmiter 10, ECF No. 47. In support, Defendant points to Irmiter's testimony that he had not performed independent testing on the units to determine whether there was an efficiency drop and that he had not based his opinion on industry literature. App. Def.'s Mot. Exclude Testimony Tom Irmiter (Irmiter Dep.) 7, 25:20-22, 5, 19:15-20, ECF No. 48. Irmiter testified that his opinions regarding the effectiveness of combing the units rather than replacing them was based on his "discussion with a number of HVAC contractors over the years." *Id*. at 32, 126:14-18. Irmiter also drew on his extensive knowledge of building codes in determining that "none of the air conditioners that we saw out there of the 59 [damaged units] meet the 2007 requirements that are now within all of the building codes." *Id*. at 35, 136:18-25. He opined that because the units never met the appropriate efficiency requirements, it would be impossible to repair them to meet those requirements. *Id*. Based on Irmiter's knowledge of the appropriate building codes and his extensive experience, the Court finds that Peatrowsky's testimony regarding the repair of the air-conditioning units is admissible.

**B.     Defendant's Expert**

Defendant offers the testimony of Tim Marshall who will testify regarding the weather conditions at the property on May 24, 2011. Plaintiff contends that Marshall's testimony is inadmissible because his opinions are not based on sufficient facts of date and are unreliable. Judged

---

[7] Defendant argues in the alternative that even if Irmiter was qualified to give his opinion regarding the causation of the damages, his testimony is unreliable because he failed to rule out other possible causes of the damage. Def.'s Br. Supp. Mot. Exclude Testimony Tom Irmiter 8, ECF No. 47. The Court has already determined that a failure to rule out other possible causes of damage does not render an expert's opinion unreliable. *See* Part III.A.2.; *Chisesi Bros. Meat Packing Co.,* 2010 WL 3720465, at *4. Accordingly, the Court finds that Irmiter's opinion on causation is admissible.

against the standards of Federal Rule of Evidence 702 and Supreme Court precedent, for the reasons that follow, the Court determines that Marshall's testimony is admissible.

### 1. Tim Marshall

Defendant employed Tim Marshall to inspect the roof coverings on the property and determine the extent of hail and wind damage. App. Pl.'s Mot. Exclude Testimony Tim Marshall 11, ECF No. 51. Marshall visually inspected the property and offered his first report on January 31, 2014. *Id*. Plaintiff does not dispute Marshall's qualifications, rather Plaintiff contends that Marshall's reliance on "Weather Fusion" data is unreliable. Pl.'s Br. Supp. Mot. Exclude Tim Marshall 2-4, ECF No. 50. Plaintiff points to Marshall's report where he states that the "radar-derived estimates of hail size from Weather Fusion, Inc. . . . have a high error rate." *Id.* at 14. He further notes that "[t]he radar cannot tell the densities of the hail or damage potential." *Id*. In his report Marshall asserted that he reviewed the following items prior to creating the report: (1) a document that included Plaintiff's responses; (2) the Fireman's Fund claim file, which included an engineering report of the property; (3) a letter from Childress Duffy noting that the property had been sold to a different company; (4) a National Climactic Data Center publication; (5) a National Weather Service report; (6) a weather report from the Dallas/Fort Worth International Airport; (7) radar-derived estimates of hail size from Weather Fusion Inc.; and (8) a physical inspection of the property. *Id*. at 13-14. Marshall relied on a variety of sources in forming his opinion. Applying the standards of Federal Rule of Evidence 702 and Supreme Court precedent, the Court finds that Irmiter's testimony regarding the size of hail that fell at the property is admissible.

### IV. CONCLUSION

For the reasons stated above, the Court **denies** Defendant's Motion to Exclude Testimony of Howard Altschule (ECF No. 40); **denies** Defendant's Motion to Exclude Testimony of Sean

Peatrowsky (ECF No. 43); **denies** Defendant's Motion to Exclude Testimony of Tom Irmiter (ECF No. 46); and **denies** Plaintiff's Motion to Exclude Testimony of Tim Marshall (ECF No. 49).

**SO ORDERED this 12th day of September, 2014.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**